**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:24-cv-2833

DANIELLE SEEWALKER,

Plaintiff,

v.

TOWN OF VAIL, COLORADO,

Defendant.

---

**COMPLAINT**

---

Plaintiff Danielle SeeWalker, by and through her counsel Timothy R. Macdonald, Sara R. Neel, and Laura Moraff of the ACLU OF COLORADO and Andy McNulty, Mari Newman, and Madeline Leibin of NEWMAN | MCNULTY, submits this complaint and alleges as follows:

**<u>INTRODUCTION</u>**

1.      Danielle SeeWalker is a Húŋkpapȟa Lakȟóta artist and muralist whose artwork incorporates traditional Native American materials and messaging. Defendant Town of Vail selected Ms. SeeWalker as its summer 2024 Artist in Residence, a role designed to diversify Vail's public art scene. After months of planning, Vail abruptly cancelled Ms. SeeWalker's residency because of the views Ms. SeeWalker expressed on her Instagram page about the ongoing humanitarian catastrophe in Gaza.

2.      The United States of America and the State of Colorado have a long and sordid history of suppressing Native American voices and perspectives. In the 1800s and 1900s, Indian Boarding Schools, a number of which were founded in Colorado, were designed to

1

dispossess Native Americans of their language, culture, and political power. Congress banned Native American ceremonies and dances and did not enact legislation to fully protect those freedoms until 1978. Native American students today are sometimes subject to dress codes that prevent them from expressing and displaying their cultural heritage.

3.      Vail has been developing an Artist in Residency program to attract diverse artists to the Town, which is not otherwise known for its diversity. Those responsible for the program were excited to announce that they had chosen a Native American artist, Ms. SeeWalker, to be Vail's Artist in Residence for the summer of 2024.

4.      As Vail's summer 2024 Artist in Residence, Ms. SeeWalker was tasked with creating a mural in Vail and providing hands-on art instruction at a community event. Vail also planned to display some of Ms. SeeWalker's existing artwork as part of her residency. In planning and promoting Ms. SeeWalker's residency, Vail continuously touted Ms. SeeWalker's Lakȟóta heritage.

5.      But Vail's interest in showcasing Ms. SeeWalker's perspective as a Native woman ended when the Town became aware of views she expressed—wholly unrelated to her residency—about the crisis in Gaza. Ms. SeeWalker posted a photo of one of her artworks entitled "G is for Genocide" on her Instagram page. The artwork depicts a woman in a keffiyeh and expresses parallels Ms. SeeWalker sees between what is happening to Palestinians in Gaza and the genocide of Indigenous people in the United States.

6.      Less than two months before Ms. SeeWalker's residency was to begin, Vail cancelled her residency because Ms. SeeWalker created artwork characterizing the killing of thousands of innocent Palestinian civilians as genocide. Vail's decision was driven by a number

of prominent townspeople complaining about Ms. SeeWalker's post on Instagram of her "G is for Genocide" artwork.

7.     Ms. SeeWalker had planned her summer around the residency in Vail. She spent time, effort, and money preparing her projects, making connections in Vail, and speaking with media outlets about her residency. She also turned down other professional opportunities because they would conflict with her residency. But because Ms. SeeWalker expressed her view that there were parallels between the ongoing conflict in Gaza and the genocide of Native Americans in the United States, Vail cancelled Ms. SeeWalker's residency.

8.     Ms. SeeWalker brings this action against Vail to hold the Town accountable for its invidious viewpoint-based discrimination and retaliation, and to ensure that Vail does not continue to suppress the perspectives of Indigenous artists and community members.

## JURISDICTION AND VENUE

9.     This action arises under the United States and Colorado constitutions and is brought pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201, and C.R.S. § 13–51–101.

10.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, because they arise under the Constitution and laws of the United States. This Court has supplemental jurisdiction over Plaintiff's pendent claims under the Colorado Constitution pursuant to 28 U.S.C. § 1367.

11.     Venue is proper under 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the District of Colorado, and all of the parties reside within the District of Colorado.

## PARTIES

12.     Plaintiff Danielle SeeWalker is a resident of Colorado and a citizen of the United States. She is also a citizen of the Standing Rock Sioux Tribe in North Dakota. Ms. SeeWalker is a Húŋkpapȟa Lakȟóta artist, muralist, writer, and activist.

13.     Defendant Town of Vail, Colorado is a mountain community and ski destination built on the unceded ancestral lands of the Ute tribe. Vail hosts an Art in Public Places ("AIPP") program overseen by a volunteer board composed of five members appointed by the Vail Town Council. AIPP assembles works of art in public places to educate the community and attract people to Vail. AIPP runs Vail's Artist in Residency program.

## FACTUAL ALLEGATIONS

### Vail's Art in Public Places Program

14.     Vail created the AIPP program in 1992 to promote public awareness of fine arts and encourage the development of new works. AIPP is responsible for maintaining Vail's public art collection and creating a diverse and meaningful public art experience in Vail.

15.     In 2022, Vail conducted a thorough review of its AIPP program. The review involved interviews, work sessions, and surveys with public representatives, stakeholders, and Vail staff to inform changes to the program moving forward.

16.     In November of 2023, after the intensive review process, the Vail Town Council adopted a new five-year strategic plan setting goals for AIPP. AIPP's goals included creating a diverse public art collection, diversifying the artists, perspectives, and materials represented in Vail's public art collection, and developing public art educational opportunities for Vail employees.

17.     Creating and maintaining a robust Artist in Residency program has been a priority for AIPP since 2023. The Artist in Residency program is meant to attract visiting artists to Vail to diversify Vail's public art collection.

18.     The inaugural Artist in Residence was Squire Broel in the summer of 2023. Mr. Broel is a Washington-based sculptor and painter.

19.     Mr. Broel's 2023 residency involved creating sculptures for the Town that Vail had approved based on his sketches. Mr. Broel's residency also involved community events at which attendees could create their own tabletop sculptures with Mr. Broel, participate in a community art project, and sketch with Mr. Broel. On information and belief, Vail paid Mr. Broel $60,000 for his work as the Artist in Residence.

20.     Any time Vail commissions an artist to contribute to its public art collection, the artist must present the concept for their artwork to the AIPP Board for approval prior to installing the artwork.

**Ms. SeeWalker's Residency**

21.     Vail selected Danielle SeeWalker as its Artist in Residence for the summer of 2024. Ms. SeeWalker is a Denver-based artist, muralist, writer, activist, and mother. She is a Húŋkpapȟa Lakȟóta woman and a citizen of the Standing Rock Sioux Tribe.

22.     AIPP Coordinator Molly Eppard, acting on behalf of Vail, spoke with Ms. SeeWalker about the 2024 Artist in Residency program on January 8, 2024. Ms. Eppard told Ms. SeeWalker via email that she wanted to learn more about Ms. SeeWalker's availability to create a mural for Vail's public art program and stated her belief that Ms. SeeWalker's work would be a great fit for the program.

23.     Ms. Eppard and Ms. SeeWalker discussed, over phone and email, the possibility of Ms. SeeWalker being Vail's summer 2024 Artist in Residence.

24.     On January 18, 2024, Ms. Eppard told Ms. SeeWalker over email that the AIPP Board was "very enthusiastic to proceed" with securing two weeks in June for Ms. SeeWalker to create a mural in Vail. Ms. Eppard's email also stated that Vail would provide lodging for Ms. SeeWalker and her two sons during that period, as well as a stipend/fee for the mural commission and other Artist in Residency programming.

25.     By January 23, 2024, Ms. SeeWalker accepted Vail's offer to be the summer 2024 Artist in Residence. On that date, Ms. Eppard confirmed with Ms. SeeWalker over email that she had secured a 3-bedroom condo in Vail for Ms. SeeWalker and her two sons to live in for the duration of the residency: June 11, 2024 through June 21, 2024.

26.     Over the next few months, Ms. Eppard and Ms. SeeWalker planned Ms. SeeWalker's residency. The centerpiece of the residency was a mural that Ms. SeeWalker would paint at the Slifer Square entrance to the Vail Village Parking Structure.

27.     Ms. Eppard and Ms. SeeWalker discussed the measurements of the mural site, cost of the materials, and need to get the AIPP Board's approval of the mural concept before Ms. SeeWalker started painting.

28.     Vail budgeted $10,000, plus materials, for the mural.

29.     In addition to creating the mural, Ms. SeeWalker's residency was slated to include participation in community events, including instructing a hands-on Parfleche art class. Parfleche are pouches that many nomadic Indigenous people use to carry their personal belongings during hunting trips or while migrating from one location to another.

30.     Ms. SeeWalker preordered materials for the Parfleche class because the materials are difficult to come by.

31.     Vail also arranged for some of Ms. SeeWalker's artwork to be displayed in Vail during her residency.

32.     Ms. Eppard selected a handful of Ms. SeeWalker's photographs from the Red Road Project, which depict Native American resilience, to hang in Vail's Welcome Centers for the summer. Vail would pay the rental fee to hang the photos.

33.     Ms. Eppard reached out to the Vail Public Library to ask if she could display some of Ms. SeeWalker's coloring pages "suitable for the library" during her residency. Vail Public Library staff confirmed that the coloring pages could be displayed and suggested adding the coloring pages in the children's section of the library.

34.     On February 29, 2024, Ms. Eppard traveled to Denver to see Ms. SeeWalker's solo exhibition opening at History Colorado. The exhibition was called *Danielle SeeWalker: But We Have Something to Say* and was meant to spark dialogue and dispel preconceptions of Native American communities and topics.

35.     Per Ms. Eppard's request, on March 6, 2024, Ms. SeeWalker met Ms. Eppard in person in Vail and visited the site of the mural. Vail paid Ms. SeeWalker's mileage and day fee.

36.     Ms. Eppard then confirmed the details of the mural-painting process with Ms. SeeWalker over email, including plans to power wash the mural site, provide cones and pedestrian egress signage, and find the closest water access and mop sink.

37.     During board meetings, the AIPP Board confirmed that Ms. SeeWalker had been selected to be Vail's 2024 Artist in Residence, and AIPP Board Meeting Minutes confirm that Ms. SeeWalker was Vail's 2024 Artist in Residence.  The AIPP Board also discussed Ms.

SeeWalker's residency during board meetings to ensure that the programming around her residency would be robust.

38.     Emails among members of the Vail community reflect that Ms. SeeWalker was selected to be Vail's Artist in Residence for the summer of 2024. For example, in a February 21, 2024, email thread, including employees of the Vail Public Library, the Program Manager for the Vail Symposium told the group that "Danielle SeeWalker . . . will be Vail's Artist in Residence in June." On various occasions from March 2024 until April 2024, Ms. Eppard informed others in the Vail community that Ms. SeeWalker would be Vail's Artist in Residence. An email from Ms. Kathleen Halloran, Vail's Deputy Town Manager, confirmed that Ms. SeeWalker had been selected to be the Artist in Residence.

39.     On the afternoon of May 6, 2024, Vail publicly announced Ms. SeeWalker as Vail's Artist in Residence. On information and belief, the announcement was sent to the 6,740 subscribers of Vail's "Art in Vail" or "General News" lists.

40.     In being selected as Vail's Artist in Residence, Ms. SeeWalker was not an employee of Vail. Vail did not consider the Artist in Residence to be an employee of Vail and the relationship of the Artist in Residence with Vail does not resemble in any way an employment relationship.

### Ms. SeeWalker's Instagram Post

41.     Ms. SeeWalker's Instagram account, @seewalker_art, lists her name, the fact that she is an artist based in Denver, and the fact that she is a Húŋkpapȟa Lakȟota citizen of Standing Rock Sioux Nation.

42.     Ms. SeeWalker regularly shares photos of her artwork on Instagram. She also shares photos of herself and information about events or exhibitions.

43.     On April 18, 2024, Ms. SeeWalker posted the following photo of one of her artworks, "G is for Genocide," to her Instagram account:



*[Description: Portrait of a Native American woman in a keffiyeh]*

44.     In the caption to her Instagram post, Ms. SeeWalker indicated that part of the proceeds from the sale of her artwork would go to the United Nations Crisis Relief Fund to aid civilians in the occupied territory of Palestine. Ms. SeeWalker used the hashtags #ARTIVISM and #artforthepeople on her post. Ms. SeeWalker's post played a snippet of the song "Still Free Palestine" by the artist Genocide in the background when viewing the post.

45.     According to Ms. SeeWalker, the artwork is her expression of parallels between the dire situation in Gaza and the genocide of Native Americans in the United States.

46.     The comments on Ms. SeeWalker's post made clear that those viewing Ms. SeeWalker's post, and her artwork, knew that she was expressing solidarity with the Palestinian people.

47.     The humanitarian catastrophe in Gaza is a matter of public concern and the subject of robust political debate.

48.     Ms. SeeWalker was not acting as Vail's Artist in Residence when she created or posted "G is for Genocide." The "G is for Genocide" artwork and Instagram post were unrelated to the summer 2024 Artist in Residency program and had no relationship to the projects Ms. SeeWalker would undertake as part of her residency.

49.     Ms. SeeWalker's post had nothing to do with her role as Vail's 2024 Artist in Residence. Her speech on the crisis in Gaza was not related in any way to her role and duties as Vail's 2024 Artist in Residence.

50.     Ms. SeeWalker never proposed or intended to create a Gaza-related mural for Vail.

51.     Neither creating the "G is for Genocide" artwork nor posting it to Instagram made Ms. SeeWalker less capable of serving as Vail's Artist in Residence and fulfilling the goals of the Artist in Residency program.

52.     On May 6, 2024, a community member emailed Ms. Eppard saying that she went to look at Ms. SeeWalker's art on Instagram and saw an "anti-Israel piece that she is selling on her website." She expressed her dismay and stated her "sincere[] hope that this sentiment will not be expressed in her Town of Vail art near the covered bridge."

53.     Ms. Eppard suggested to the AIPP Board members that she could assure the community member "that any mural on [Town of Vail] property will be approved by the AIPP Board and we definitely will not introduce divisive politics into the art."

54.     In response to Ms. Eppard, AIPP Board Member Kathy Langenwalter suggested not answering until "Russ and/or Matt" approved a response. On information and belief, "Russ" is Vail's Town Manager, Russell Forrest.

55.     On May 7, 2024, Rabbi Joel Newman of the B'nai Vail Congregation emailed several Town officials expressing his concerns about Vail's choice to have Ms. SeeWalker as Vail's Artist in Residence. Rabbi Newman's concerns were based on Ms. SeeWalker's "G is for Genocide" artwork. Rabbi Newman stated in his email that "G is for Genocide" refers to the war in Gaza, and that Ms. SeeWalker "proudly displays her work claiming that Israel is committing genocide," a claim he characterized as "abhorrent to the Jewish world."  Rabbi Newman stated: "While there are many who are disturbed by the idea that the Israel response contains casualties, it is not genocide. This dichotomy of views will cause extreme reactions that are guaranteed to extend beyond the town of Vail."

56.     Rabbi Newman stated in his email that "members of the Jewish community of Vail are extremely unhappy" about the selection of Ms. SeeWalker as Vail's Artist in Residence. Rabbi Newman claimed there were over 3,000 Jewish families who live in and visit Vail that were deeply concerned with the selection.

57.     Shortly after receiving the Rabbi's email, Ms. Eppard directed Bobby L'Heureux, Owner and Director of Partnerships at Jaunt Media Collective, to "hold the press" on articles about Ms. SeeWalker as Vail's Artist in Residence. Less than three hours after the Rabbi's email, Ms. Eppard said that Vail had to pull Ms. SeeWalker from the residency.

58.     Shortly after the Rabbi sent his email, Ms. Eppard and Ms. SeeWalker had the following exchange via text message:



59.    *[Description: Screenshot of messages between Ms. Eppard and Ms. SeeWalker]*As shown in the above screenshot, Ms. Eppard told Ms. SeeWalker that there was "an unfortunate situation" with Ms. SeeWalker's residency "about the G is Genocide print," and that "[t]he Jewish congregation in Vail [was] very upset."

60.    Ms. SeeWalker was traveling by plane on May 7, 2024, for reasons unrelated to her residency.

61.    Ms. SeeWalker tried to call Ms. Eppard back after her plane landed, but she did not receive a response.

62.    On May 8, 2024, Ms. Eppard directed other Vail employees to "pull any content that Danielle SeeWalker is the Artist in Resident."

63.     At least one AIPP Board Member believed that the plan was to find a different Artist in Residence for the summer 2024 residency.

**Cancellation of Ms. SeeWalker's Residency**

64.     Vail cancelled Ms. SeeWalker's residency because of the views she expressed in her "G is for Genocide" artwork.

65.     The decision to cancel Ms. SeeWalker's residency was made by an authorized decisionmaker with final authority to establish municipal policy with respect to the Artist in Residency program.

66.     On May 9, 2024, Ms. Halloran informed Ms. SeeWalker that Vail had decided to cancel her summer 2024 residency. On information and belief, Ms. Halloran had been delegated policymaking authority by the Town Manager to cancel Ms. SeeWalker's residency on behalf of Vail. Under Vail Mun. Code § 1-6A-3 the town manager had final policymaking authority to make decisions related to the Artist in Residency program.

67.     Ms. Halloran made clear to Ms. SeeWalker that the reason for the cancellation of her residency was her "G is for Genocide" artwork.

68.     Ms. Halloran told Ms. SeeWalker over the phone that Vail was cancelling her residency. Ms. Halloran said that Vail wanted to have diversity at the core of its Artist in Residency program, but because Ms. SeeWalker had shared her "G is for Genocide" artwork, the situation had gotten too political, the Jewish congregation was very upset, and, therefore, Vail was cancelling her as the Artist in Residence.

69.     Ms. Halloran told Ms. SeeWalker that Vail was cancelling her residency because Vail can't have someone like her—someone who had expressed the view that there is an ongoing genocide in Gaza—creating art in their town.

70.     Ms. Halloran's assertion that Vail could not have someone like Ms. SeeWalker as the Artist in Residence is reminiscent of the historical silencing of Native American voices and perspectives in this country and state.

71.     Ms. Eppard was in the room with Ms. Halloran during the phone call to Ms. SeeWalker.

72.     Prior to May 9, 2024, Ms. SeeWalker had never spoken with Ms. Halloran.

73.     The cancellation of Ms. SeeWalker's residency represented the official policy of Vail.

74.     After Vail cancelled Ms. SeeWalker's residency, Ms. Eppard thanked Rabbi Newman for "helping address the unfortunate situation regarding the recently released studio print by Danielle SeeWalker." Ms. Eppard also told Rabbi Newman: "The Art in Public Places Board does not endorse divisiveness and I thought you should know the decision of the Board to pause the program."

75.     On May 9, 2024, Vail issued an Artist in Residency Update on its website announcing that AIPP was "not moving forward with its summer Artist in Residency and related programs. The decision was made after concerns arose around the potential politicizing of the public art program."

76.     The May 9, 2024, announcement indicated that, while Vail embraces Ms. SeeWalker's messaging and artwork surrounding Native Americans, it did not want to support her position that there was ongoing genocide in Gaza.

77.     Following Vail's May 9, 2024, cancellation announcement, community members—including Native community members—expressed their anger and disappointment. As one member of the Wahzhanzhe (Osage Nation), Tara McLain Manthey, put it, "Vail not

14

only lost an opportunity to support and connect with Indigenous people living in [the] community, but also missed an opportunity for local non-Natives—and millions of visitors each year—to learn about Indigenous people from her work."

78.    Vail's decision to cancel Ms. SeeWalker's residency indicates to Ms. SeeWalker and other community members that Vail only wants art and artists that conform with its preferred worldview.

79.    Vail's decision to cancel Ms. SeeWalker's residency was seen by many as a continuation of the history of silencing Native American people and suppressing their perspectives.

80.    Refraining from cancelling artists' residencies when they express unrelated views on political events would not cause substantial hardship for Vail.

81.    On May 14, 2024, Vail posted another Artist in Residency Update stating, in part:

> Our decision not to move forward with SeeWalker's residency was not made in a vacuum; after releasing her name in an announcement, community members, including representatives from our local faith-based communities, raised concerns to town staff around SeeWalker's recent rhetoric on her social media platform about the Hamas-Israel war.

82.    Vail's cancellation of Ms. SeeWalker's residency caused Ms. SeeWalker irreparable injury.

83.    Vail's cancellation of Ms. SeeWalker's residency caused Ms. SeeWalker to lose the opportunity to promote and share her work as Vail's Artist in Residence.

84.    Because Vail cancelled Ms. SeeWalker's residency less than two months before it was set to begin, Ms. SeeWalker lost out on other professional opportunities for the summer of 2024.

85.     Vail's cancellation prevented Ms. SeeWalker from receiving the residency stipend.

86.     Vail's cancellation of Ms. SeeWalker's residency caused her to lose the valuable time and resources she spent preparing for the residency.

87.     Ms. SeeWalker has lost business because of Vail's cancellation of her residency. And Ms. SeeWalker has lost the opportunities that would have come from serving as Vail's Artist in Residence.

88.     Serving as Vail's Artist in Residence gives artists the opportunity to share their work with residents and tourists in Vail. Artists benefit from that type of increased exposure, because it makes others more aware of their work. That awareness often leads  to monetary benefits—especially in an affluent town like Vail—as well as nonmonetary benefits for the artist.

89.     Monetary damages alone are inadequate to compensate Ms. SeeWalker for all the harm she suffered as a result of Vail's cancellation of her residency.

90.     Vail's cancellation of Ms. SeeWalker's residency caused Ms. SeeWalker emotional distress, shock, and sadness. Ms. SeeWalker experienced the cancellation as a suppression of her views as both an artist and a person of color.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment
### Freedom of Speech and Association

91.     The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

92.     As the local government in charge of the Artist in Residency program, Vail decides which artists receive the residency opportunity and related funding.

16

93.     Government entities are not permitted to award or deny grants based on invidious viewpoint discrimination.

94.     Vail cannot, consistent with the First Amendment, condition its residency opportunity on personal assent with prescribed views on the humanitarian catastrophe in Gaza.

95.     Vail awarded Ms. SeeWalker the Artist in Residence opportunity for the summer of 2024. Vail and Ms. SeeWalker spent months preparing for Ms. SeeWalker's residency.

96.     All of Ms. SeeWalker's preparations for her residency indicated that her residency would further the purpose of the Artist in Residency program: to diversify Vail's public art collection. Ms. SeeWalker did not violate any requirements or guidelines of the Artist in Residency program.

97.     After Ms. SeeWalker posted her "G is for Genocide" artwork on her Instagram page, Rabbi Newman and others urged Vail to cancel Ms. SeeWalker's residency because they disagreed with her views on the conflict in Gaza as expressed in her "G is for Genocide" artwork.

98.     Ms. SeeWalker's "G is for Genocide" artwork is unrelated to Vail's Artist in Residency program. Ms. SeeWalker's residency would not have involved sharing her views on the conflict in Gaza. None of the funds Vail had offered Ms. SeeWalker were to produce or share artwork expressing views on the conflict in Gaza.

99.     Ms. SeeWalker never asked Vail to display her "G is for Genocide" artwork as part of her residency.

100.     Any artwork displayed as part of the AIPP and Artist in Residency programs must be approved by the AIPP Board in advance.

101.    Vail cancelled Ms. SeeWalker's residency because of the views Ms. SeeWalker expressed in her "G is for Genocide" artwork.

102.    Vail had no legitimate reason to cancel Ms. SeeWalker's residency.

103.    By cancelling Ms. SeeWalker's residency, Vail indicated that the views Ms. SeeWalker expressed on the crisis in Gaza are not welcome in Vail.

104.    The decision to cancel Ms. SeeWalker's residency was made by Vail officials responsible for establishing final policy with respect to the Artist in Residency program.

105.    Ms. SeeWalker is entitled to monetary, declaratory, and injunctive relief for Vail's violation of her First Amendment rights.

106.    This Court should enjoin Vail from continuing to engage in invidious viewpoint discrimination in its Artist in Residency program.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 – First Amendment
### Retaliation

107.    The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

108.    Ms. SeeWalker was engaged in First Amendment-protected activity unrelated to Vail's Artist in Residency program when she created and posted her "G is for Genocide" artwork.

109.    Ms. SeeWalker's speech was on a matter of public concern and did not violate any law.

110.    Vail cancelled Ms. SeeWalker's residency because of the views she expressed on the catastrophe in Gaza. Ms. Eppard told Ms. SeeWalker in a text message that the cause of the "unfortunate situation" with the residency was her "G is for Genocide" post on Instagram.

111.    Ms. SeeWalker is experiencing professional, reputational, financial, and emotional harms as a result of Vail's cancellation of her residency.

112.    Vail's actions caused Ms. SeeWalker to suffer an injury that would chill a person of ordinary firmness from continuing to share views on current events.

113.    An ordinary person who loses government funding and a prestigious opportunity because of unrelated statements they made on their personal social media page would hesitate to make such statements in the future.

114.    An ordinary person who loses a professional opportunity because they expressed on their personal Instagram account that there is an ongoing genocide in Gaza would be less likely to share that view in the future.

115.    Vail's cancellation of Ms. SeeWalker's residency was substantially motivated by Ms. SeeWalker's "G is for Genocide" artwork posted on Instagram.

116.    Ms. Halloran was a final policymaker for Vail and/or had been delegated final policymaking authority to cancel Ms. SeeWalker's residency

117.    Ms. SeeWalker is entitled to monetary, declaratory, and injunctive relief for Vail's violation of her First Amendment rights.

118.    This Court should enjoin Vail from revoking future residency opportunities based on artists' pieces that were not related to the Artist in Residency program.

**THIRD CLAIM FOR RELIEF**
**Colo. Const. Art. II, Section 10**
**Freedom of Speech and Association**

119.    The allegations of the foregoing paragraphs are incorporated by reference as though fully set forth herein.

120.     The Free Speech Clause to the Colorado Constitution provides that "[n]o law shall be passed impairing the freedom of speech; every person shall be free to speak, write or publish whatever he will on any subject, being responsible for all abuse of that liberty; and in all suits and prosecutions for libel the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the fact." Colo. Const. Art. II, Section 10. This protects the right to speak and associate.

121.     The free speech rights protected by Colo. Const. Art. II, Section 10 are more expansive than those protected by the First Amendment to the United States Constitution.

122.     Ms. SeeWalker was engaged in activity protected under Colo. Const. Art. II, Section 10 unrelated to Vail's Artist in Residency program when she created and posted her "G is for Genocide" artwork.

123.     Ms. SeeWalker's speech was on a matter of public concern and did not violate any law.

124.     Vail cancelled Ms. SeeWalker's residency because of the views she expressed on the crisis in Gaza. Ms. Eppard told Ms. SeeWalker in a text message that the cause of the "unfortunate situation" with the residency was her "G is for Genocide" post on Instagram.

125.     Ms. SeeWalker is experiencing professional, reputational, financial, and emotional harms as a result of Vail's cancellation of her residency.

126.     Vail's actions caused Ms. SeeWalker to suffer an injury that would chill a person of ordinary firmness from continuing to share views on current events.

127.     An ordinary person who loses government funding and a prestigious opportunity because of unrelated statements they made on their personal social media page would hesitate to make such statements in the future.

128.    An ordinary person who loses a professional opportunity because they expressed on their personal Instagram account that there is an ongoing genocide in Gaza would be less likely to share that view in the future.

129.    Vail's cancellation of Ms. SeeWalker's residency was substantially motivated by Ms. SeeWalker's "G is for Genocide" artwork posted on Instagram.

130.    Ms. SeeWalker is entitled to monetary, declaratory, and injunctive relief for Vail's violation of her First Amendment rights.

131.    This Court should enjoin Vail from revoking future residency opportunities based on artists' pieces that were not related to the Artist in Residency program.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgement in her favor and against Defendant, and award her all relief as allowed by law and equity, including, but not limited to the following:

a.   All appropriate relief at law and equity;

b.   Declaratory relief;

c.   Injunctive relief;

d.   Actual economic damages as established at trial;

e.   Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty, privacy, and sense of security and individual dignity, and other non-pecuniary losses;

f.   Issuance of an Order mandating appropriate equitable relief;

g.   Pre-judgment and post-judgment interest at the highest lawful rate;

h.   Attorney's fees and costs; and

i.   Such further relief as justice requires.

## **REQUEST FOR TRIAL BY JURY**

Plaintiff demands a jury trial on all issues so triable.

Dated: October 14, 2024

Respectfully submitted,

NEWMAN | MCNULTY

*s/ Andy McNulty*

_____

Andy McNulty
Mari Newman
Madeline Leibin
1490 N. Lafayette Street
Suite 304
Denver, Colorado 80218
(720) 850-5770
andy@newman-mcnulty.com
mari@newman-mcnulty.com
madeline@newman-mcnulty.com

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF COLORADO

Timothy R. Macdonald
Sara R. Neel
Laura Moraff
303 E. 17th Ave.
Suite 350
Denver, Colorado 80203
(720) 402-3155
tmacdonald@aclu-co.org
sneel@aclu-co.org
lmoraff@aclu-co.org

ATTORNEYS FOR PLAINTIFF